

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

## No. 02-18-00240-CR

———————————————

JOSE VALENTINE BARRON A/K/A JOE BARRON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1489122D

---

Before Gabriel, Kerr, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

A jury convicted Appellant Jose Valentine Barron a/k/a Joe Barron of murder and assessed his punishment at thirty-five years' confinement. The trial court sentenced him accordingly. In his sole point, Barron contends that the trial court reversibly erred by overruling his objection to the prosecutor's arguing the range of punishment during the closing argument of the guilt-innocence phase. Because Barron's objection did not preserve his complaint on appeal, or alternatively, any error was harmless, we affirm the trial court's judgment.

## I. RELEVANT FACTS[1]

One morning in the warehouse where he worked, Barron began a verbal altercation with co-worker Ricardo Muniz, telling him to work harder. The verbal battle escalated into a physical fight. Fellow employee Sergio Adrian testified that Barron pushed Muniz with his hands; Muniz told his manager that Barron chest-bumped him. After that initial physical contact, Barron and Muniz fought. Muniz pinned Barron to the concrete floor, punched his face multiple times, and, according to Barron, choked him. After their manager pulled Muniz off Barron, sent Muniz to the manager's office, and directed Barron to return to his work area, Barron soon hurried to the manager's office, opened the closed door without knocking, and

---

[1]Barron does not challenge the sufficiency of the evidence supporting his murder conviction. We therefore omit a detailed statement of facts regarding the offense.

demanded to know what Muniz was telling the manager about him. The fight resumed, and Muniz again prevailed. The co-owner of the business pulled Muniz off Barron and shoved him out of the manager's office. Barron pursued Muniz through the kitchen located across the hall from the office, grabbed a butcher knife from the kitchen counter, and stabbed him in the heart. Muniz died within minutes.

Barron was indicted and tried for murder. His main defensive theory was self-defense, but the jury was also charged on the lesser-included offenses of manslaughter and criminally negligent homicide.

In the State's initial closing argument of the guilt-innocence phase, the prosecutor stated,

> The lesser-included offenses that come after the murder aspect of this were simply handled when Dr. Miller[, who performed the autopsy,] . . . talked to you about the significant force that's required to puncture a man's heart, go through his ribs, through his muscles, and through his heart. That's what addresses those lesser-included offenses.

> This is a murder trial, and the evidence that has been brought to you proves each and every element of this murder beyond a reasonable doubt.

In the defense's closing argument, defense counsel stated,

> Now, the second thing is, if you find [Barron] not guilty of [murder], then you can consider something else. You can consider whether or not he was reckless in his behavior. That's what manslaughter is all about. Was he reckless?

> Well, you have to look at he still had to intentionally get to a certain level to be reckless. He has to. You have to believe that.

> But then there's another issue that he could have [committed] criminally . . . negligent homicide. Well, is he there? Has he, in his

3

situation, based upon everything that has taken place, deviated from normal? What we're supposed to be looking at: Should he have known and appreciated that in all of that fighting and all of the circumstances that took place, that he might ultimately end up killing someone?

And I submit to you he is not guilty of murder. He is not guilty of murder. He is not guilty of any of the others. The only thing, if he's guilty of anything, is criminal[ly] negligent homicide because he deviated from the gross level of what we look at.

And just to read it right quick—I mean, I just feel that he's not guilty based upon the evidence itself. But the criminal[ly] negligent homicide basically says that when you're at a level and you're fighting with somebody, a person acts with criminal negligence or is criminally negligent with respect to the result of his conduct when he ought to be aware—he should have been aware in all of this fighting . . . of the substantial unjustified risk that the result would occur.

And did he fail to perceive a gross deviation from the standard care that ordinary people would exercise? . . .

. . . .

What we have is these bruises around his neck. They didn't get there by themselves. He didn't put them there by himself. Somebody put them there. And as a result of it, he says that, I feel threatened. I feel somebody was going to kill me. And that's what self-defense is all about. If you perceive that you're about to be killed, if you . . . perceive serious bodily injury is about to be harm to you that could result in death, the same thing to Ricky, you have the right to defend yourself.

. . . .

So, therefore, I'm going to ask you to find him not guilty.

In the State's final closing argument, the prosecutor responded,

Another statement [Barron made to the police that] I didn't ask him about [in cross-examination]: When you had that knife and you're coming at him, what are you trying to do?

Trying to hurt him like he hurt me.

4

If you have any single question about whether or not he meant to kill somebody, think about that last line: Trying to hurt him like he hurt me.

And you heard Dr. Miller talk about it. That is . . . an intentional act. That takes some force. And no matter how many questions the Defense asked her about what could have happened, she did not agree with him. That takes force. That cut through bone. What do you think it is to get a knife through your rib right now? How much force do you think that takes? How much force do you think it takes to cut through a rib right now? It's not accidental, it's anger.

Ladies and Gentlemen, this case is very, very simple. This is an intentional murder. He either meant to kill Ricky or he meant to do him serious bodily injury and did a reckless act by stabbing him. Nothing else. This is not self-defense.

And very, very quickly about the lesser-included offenses. *Manslaughter, if you're really convinced and talking about manslaughter, then just walk him, because the most he can get on that is 20 years.*

*[Defense Counsel]: Your Honor, I'm going to object. That's improper. That's just improper. I object.*

*[Prosecutor]: If you're talking about criminally negligent homicide—*

*[Defense Counsel]: Judge, I object to—*

*THE COURT: Overruled. I've overruled it.*

*[Defense Counsel]: Well, he was about to say something else, too, so I'm objecting. Judge, this goes—*

*THE COURT: I've overruled it, [Defense Counsel]. This is all argument. It's not evidence.*

*[Prosecutor]: If you talk about criminally negligent homicide, just walk him, because it doesn't do justice for this family.*

Ladies and Gentlemen, on March 1st of 2017, a brother, a son, a father, a friend, a member of all of our community was murdered in cold blood in a very brutal fashion, in such a way that when he was bleeding

5

out, he was suffocating on his own blood. And Ladies and Gentlemen, that is not self-defense. That is murder. Thank you.

[Emphasis added.]

The jury convicted Barron of murder, rejected his sudden-passion defense, and sentenced him to thirty-five years' confinement.

## II. DISCUSSION

In his only point, Barron contends that the trial court reversibly erred by overruling his objection to the prosecutor's arguing, "[I]f you're really convinced and talking about manslaughter, then just walk him, *because the most he can get on that is 20 years.*" [Emphasis added.][2]

### A. Barron did not preserve his appellate complaint.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Because it is a systemic requirement, this court independently reviews error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its

---

[2]Barron couches his point in terms of "range of punishment," but the prosecutor mentioned only the maximum term of confinement for manslaughter, not the minimum. Regardless, we recognize that Barron's focus is on the prosecutor's mentioning "20 years."

merits.  *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016); *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010).

Barron contends that the trial court's overruling of his objection preserved his complaint, relying solely on *Freeman v. State*, 985 S.W.2d 588, 589–90 (Tex. App.—Beaumont 1999, pet. ref'd).  That case, however, does not tell us any details about the wording of that defendant's objection.  *See id.*  Here, on the other hand, Barron objected that the prosecutor's argument was "improper."  His objection that the argument was "improper" did not preserve his appellate complaint.  *See Hougham v. State*, 659 S.W.2d 410, 414 (Tex. Crim. App. [Panel Op.] 1983) (holding objection to "this line of argument" not specific enough to preserve error); *Vasquez v. State*, 501 S.W.3d 691, 705 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding defendant's general objection of "improper argument" insufficient to preserve error).  We therefore hold that Barron forfeited his sole appellate point.

## B.     Alternatively, any error was harmless.

Even if Barron had preserved his complaint, any error was harmless.  To be permissible, the State's jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement.  *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992).  By referring to the maximum confinement available for manslaughter, twenty years, the challenged argument, taken

7

alone, appeared to "encourage the jury to convict on the basis of the amount of punishment, rather than the facts supporting guilt." *Bruton v. State*, 921 S.W.2d 531, 536 (Tex. App.—Fort Worth 1996, pet. ref'd); *see also McClure v. State*, 544 S.W.2d 390, 393 (Tex. Crim. App. 1976), *overruled on other grounds by Werner v. State*, 711 S.W.2d 639, 646 (Tex. Crim. App. 1986); *Freeman*, 985 S.W.2d at 589–90.

Even if a jury argument exceeds the permissible bounds, however, we will not reverse a trial court's judgment on the basis of a trial court's erroneous overruling of a defense objection unless the error affected the defendant's substantial rights. Tex. R. App. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g). In determining whether substantial rights were affected, we consider (1) the severity of the misconduct (that is, the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Mosley*, 983 S.W.2d at 259.

*First*, viewing the challenged argument in a vacuum, it appears prejudicial. The prosecutor encouraged the jurors to acquit Barron if they reached the question of manslaughter (and thereby acquitted him of murder) because manslaughter carried only a maximum confinement of twenty years. Yet considering the entire arguments of the defense and the State, the prosecutor was responding to the defense's arguments about the possibilities of the jury acquitting Barron of murder and considering manslaughter. While the prosecutor's argument referring to twenty years' maximum confinement for manslaughter was improper, it seemed intended to

convince the jurors that reaching the manslaughter issue would be a serious dereliction of their duties as the factfinders because the evidence strongly supported a murder conviction. We cannot conclude that the argument challenged here, taken in context, rises to the level of prejudice reached by the arguments in *McClure* and *Freeman*. *See McClure*, 544 S.W.2d at 393 (noting that the prosecutor argued that the defendant should be convicted of murder because of its greater penalty, not the evidence, and that he referred to the possible punishment repeatedly despite defense counsel's objections and the trial court's instructions); *Freeman*, 985 S.W.2d at 589 (in holding the trial court reversibly erred, noting that the prosecutor provided the ranges of punishment for both the greater offense and the lesser offense).

The facts of our case appear more aligned with those in *Bruton*, 921 S.W.2d at 536 (noting that "[t]he prosecutor referred to only *one* range of punishment" and concluding, "Therefore, the jury was not encouraged to choose between the two offenses on the basis of a comparison between punishments, rather than the facts presented.");[3] and *Dickerson v. State*, No. 03-00-00702-CR, 2001 WL 987257 (Tex. App.—Austin Aug. 30, 2001, pet. ref'd) (not designated for publication).

In *Dickerson*, defense counsel argued in the guilt-innocence phase that the jury should acquit the defendant of robbery but that he had admitted guilt of unauthorized use of a motor vehicle and could be convicted of that offense. 2001 WL 987257, at

---

[3]We recognize that the *Bruton* trial court issued an instruction to disregard.

*6. In response, the prosecutor argued that the defendant had admitted guilt to a lesser offense because he knew that he was going to be found guilty of the charged offense. *Id.* at *7. The prosecutor reminded the jury, "[W]e talked about in voir dire that a lesser offense obviously carries a lesser punishment range." *Id.* The trial court overruled the defendant's objection and request for an instruction to disregard. *Id.* The prosecutor then argued without objection,

> Ladies and gentlemen, the defendant has motive to get up on the stand and admit guilt of a lesser offense of unauthorized use of a motor vehicle. He has motive to do that because robbery has a higher punishment range. He would rather be convicted of a lesser offense, and that's the reason he got up . . . there and admitted that. He knows he's going to be found guilty. He was found in the car that he stole and robbed Mary of. He was identified in a photo lineup. He has no other thing left.

*Id.* On appeal, Dickerson argued that the "trial court erred in overruling [his] objection to the State's final argument urging the jury to reject [his] defense that he committed the lesser-included offense of unlawful use of a motor vehicle on the basis that the State urged the jury to consider the range of punishment involved." *Id.* at *6. Our sister court held that "[t]he prosecutor had a right to answer and respond to" the defendant's argument that he be convicted only of a lesser-included offense based on his testimony. *Id.* at *7. "It was clearly permissible for the prosecutor to urge the jury, based on the evidence, to convict [the defendant] of robbery, the primary offense." *Id.* In its rationale, our sister court pointed out that (1) the trial court had previously read the jury charge to the jury; (2) the jury charge had described the lesser

offense as a lesser-included offense; (3) the jury charge contained an instruction not to consider punishment at the guilt-innocence phase; (4) the jury charge was available during deliberations; and (5) "it is common knowledge that lesser offenses carry lesser penalties." *Id.* at *8. In holding the argument resulted at most in harmless error, the court summarized: "The complained-of argument was a small portion of the prosecutor's closing argument, it was invited argument, the jury is presumed to have followed the court's charge, and there was overwhelming evidence that the offense committed was robbery. If there was error in the argument, it was harmless error." *Id.* (citations omitted).

Here, the trial court read the jury charge to the jury before closing arguments. The jury charge mentioned the lesser-included offenses of manslaughter and criminally negligent homicide. Finally, the jury was instructed to "consider the charge as a whole," to " confine [its] deliberations solely to the issue of whether [Barron was] guilty or not guilty of the" charged offenses, and to be governed by the law the trial court delivered in the charge. We therefore conclude that the challenged argument, though improper, was not prejudicial in the context in which it was delivered. *See Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011) ("Because the improper questions were embedded within other remarks that invited the jury to draw a *legitimate* inference from information contained in the appellant's kite, we think the magnitude of the prejudice was concomitantly diminished."); *Mosley*, 983 S.W.2d at 260 ("We do not condone the prosecutor's actions, but the severity of the misconduct

11

is relatively small. The first factor of the harm test does not weigh very heavily in appellant's favor."); *Whitney v. State*, 396 S.W.3d 696, 706 (Tex. App.—Fort Worth 2013, pet. ref'd) ("Even assuming that the prosecutor's remark was improper, we hold that it was not severe or unduly prejudicial."). This factor weighs against Barron. *See Whitney*, 396 S.W.3d at 706.

*Second*, the trial court did not take any curative measures. Instead, the trial court overruled the objection. This factor favors Barron. *See Watts v. State*, 371 S.W.3d 448, 460 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Good v. State*, 723 S.W.2d 734, 738 (Tex. Crim. App. 1986) ("[A] trial court, by overruling an objection to an improper argument, puts the stamp of judicial approval on the improper argument, thus magnifying the possibility for harm.") (internal quotation marks omitted).

*Third*, the certainty of Barron's conviction was very high. The jury heard evidence that

- Barron and Muniz did not get along well;

- Barron had a history of instigating verbal battles with Muniz;

- Barron was the aggressor in all the altercations on the day he killed Muniz;

- In his videotaped police interview, Barron admitted that his anger was "jumping in" him;

- In that same interview, Barron said that Muniz was backing away when leaving the manager's office and never stopped facing Barron; Barron "went chasing after" Muniz; Barron grabbed the butcher knife; and Barron "attacked" Muniz and "just . . . stabbed" him;

- Barron admitted in his testimony that he was in no immediate danger when he grabbed the knife;

- The stab wound was 1.5 inches long and went six inches deep;

- The knife cut through Muniz's rib and left chest cavity before entering and exiting his heart;

- The medical examiner testified that "the force required to produce those injuries would be very difficult to be accidental. A lot of force is required to go through the skin, the muscle, the bone, and through the heart";

- Barron admitted in his police interview that the business's co-owner had taken the knife from him after he stabbed Muniz;

- In his telephone call with police before his arrest, Barron admitted that he "did what [he] had to do" and stabbed Muniz;

- Barron stated in his videotaped interview that he was "trying to hurt [Muniz] like he [had] hurt [Barron]"; and

- Barron said, "I got you that time, bitch," as he left the room in which the fatally wounded Muniz remained.

Although Barron's testimony raised the issue of self-defense and, to a lessen extent, the issues of manslaughter and criminally negligent homicide, his telephone call and videotaped interview with the police and the testimony of the witnesses present when he argued and fought with Muniz and ultimately stabbed him overwhelmingly support his murder conviction. *See, e.g.*, *Wilson v. State*, 179 S.W.3d 240, 250 (Tex. App.—Texarkana 2005, no pet.) ("[T]here is ample evidence to convict. There was no dispute Wilson shot and killed Monday. . . . [T]he State's case was strong. This brief reference by the State to the issue of punishment was a small, unnecessary particle of

13

refuse in a sea of incriminating evidence."); *Dickerson*, 2001 WL 987257, at *8. This factor favors the State.

Thus, even if Barron had preserved his point and even if the trial court erred by overruling his objection, we would hold such error harmless after applying the *Mosley* factors. *See* 983 S.W.2d at 259.

## III.  CONCLUSION

Because Barron forfeited any error, which we have explained in the interest of justice was at most harmless, we overrule his sole point and affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  December 12, 2019

14