

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-17-00039-CR

———————————————————

ROSA MARIA ORTEGA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1434155D

---

Before Gabriel, Kerr, and Pittman, JJ.
Memorandum Opinion by Justice Pittman

# MEMORANDUM OPINION

A Tarrant County jury convicted Appellant Rosa Maria Ortega of two counts of illegal voting in Dallas County and assessed her punishment at eight years' confinement and a $5,000 fine for each count. *See* Tex. Elec. Code Ann. § 64.012 (West Supp. 2018) (providing that a person commits a second-degree felony if he votes in an election in which he knows he is not eligible to vote), §§ 273.021(a), 273.024 (West 2010) (together allowing the Texas Attorney General (AG) to prosecute election offenses in "an adjoining county" to the county of the offense); Tex. Penal Code Ann. § 12.33 (West 2011) (providing range of punishment for second-degree felonies). The trial court sentenced Appellant accordingly, ordering the sentences to run concurrently. In two issues, Appellant contends that the trial court abused its discretion by denying her motion to suppress her statements and erred by overruling her objections to the State's closing argument at punishment. Because Appellant forfeited both issues by failing to preserve them in the trial court, we affirm the trial court's judgments.

## BACKGROUND FACTS

Appellant came to the United States as a baby and obtained a "green" card as a child. At all pertinent times, she was a lawful permanent resident, not a United States citizen. On October 21, 2014, Appellant sent a completed voter registration application indicating she was not a United States citizen to the Tarrant County Elections Administration. On December 6, 2014, that office responded by sending

her a letter informing her that she was ineligible to vote because she was not a citizen. After receiving this letter, Appellant called the Elections Administration office and asked why she received the rejection letter. Appellant was then told that her voter registration application was rejected because she checked the "no" box for citizenship. In March 2015, Appellant filled in and mailed a second voter registration application, but this time Appellant checked the "yes" box regarding United States citizenship. This second application ultimately landed on the desk of Delores Stevens, the employee at the Elections Administration who had both written Appellant's rejection letter and spoken with her by telephone. Despite the Election Administration's concerns with the discrepancies in Appellant's two applications, it registered her to vote.

After the AG's office received allegations that Appellant had voted illegally in two elections in Dallas County, Sergeant Joseph Boone Cadwell, an investigator with the AG's office, began investigating her. He asked an analyst with his office to obtain Appellant's voting records from the Dallas County Elections Administrator, her Texas Department of Public Safety records, and her customs and immigration records. His investigation revealed that Appellant had registered to vote four times in Dallas County and twice in Tarrant County. The Dallas County voting records reflected that Appellant had voted in Dallas County in 2012 and 2014. Her certified Texas identification card application from September 2008 indicated that she presented her resident alien card and social security card as identification. But the application also

3

showed that she both denied being a United States citizen and wanted to complete a voter registration card. A then unconfirmed database result stated that Appellant was a lawful permanent resident.

On October 8, 2015, at approximately 9:45 a.m., Sergeant Cadwell and Sergeant Wayne Rubio visited Appellant's house to discuss the discrepancies in her voting history. They had not yet confirmed whether she was still a lawful permanent resident or had become a United States citizen. At the investigators' request, Appellant stepped outside onto her front porch to talk to them, and the conversation lasted about nine minutes. In that conversation, which the investigators audio-recorded without Appellant's knowledge, she said that she was not a United States citizen and that she checked "yes" in the citizenship box on her second Tarrant County voter registration application because Dallas County, where she had previously lived for several years, never had a problem with her voting. She also admitted that she indicated that she was a citizen on the forms the investigators showed her so that she could vote. After the conversation ended, the investigators left. An arrest warrant against Appellant was issued approximately three months later in January 2016.

After a jury convicted her of two counts of illegal voting and the trial court sentenced her in accordance with the jury's punishment verdict, Appellant brought this appeal.

4

## DISCUSSION

**I.     Appellant Forfeited Any Error Preserved by the Unfavorable Ruling on Her Motion to Suppress.**

In her first issue, Appellant contends that the trial court abused its discretion by denying her motion to suppress her oral statements to the AG's investigators. The State responds that Appellant forfeited her complaint when her defense counsel stated, "No objection" in response to the prosecutor's proffer for all purposes of the written transcript of the audio-recording of Appellant's conversation with the AG's investigators. We agree with the State.

Usually, the denial of a motion to suppress preserves error without any further objection needed when the evidence is later admitted at trial. *Thomas v. State*, 408 S.W.3d 877, 881 & n.14 (Tex. Crim. App. 2013) (listing cases). Traditionally, though, defense counsel's stating "No objection" would forfeit error that had been previously preserved by an unfavorable ruling on a motion to suppress. *See id.* at 881–82 & n.15 (listing cases). In *Thomas*, the Texas Court of Criminal Appeals held that defense counsel's stating "No objection" no longer automatically results in forfeiture of error preserved by a ruling on a motion to suppress, but the Court has also made clear:

> [I]f from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the "no objection" statement to be a waiver of the earlier-preserved error. Under the latter circumstances, the

5

affirmative "no objection" statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood.

*Id.* at 885–86.

In her written, pretrial motion to suppress, Appellant sought to suppress "[a]ll written and oral statements" she made "to any law enforcement officers or others in connection with this case" as well as "[t]estimony of law enforcement officers or others concerning the . . . statements." The trial court denied the suppression motion outside the jury's presence after the trial began. Appellant's defense counsel also objected unsuccessfully during trial to the admission of the audio-recording of the conversation into evidence but acquiesced in the limited admission of the written transcript of it as a demonstrative aid for the jury.

Later, however, when the prosecutor was cross-examining a defense witness during Appellant's case-in-chief, he offered the transcript for all purposes. Appellant's defense counsel stated, "[N]o objection. No objection[,]" and the trial court admitted the transcript for all purposes. Appellant did not allude to the alleged illegality of the conversation again and did not request that an article 38.23 instruction be included in the jury charge. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2018). Accordingly, we hold that when her defense counsel affirmatively stated "[No] objection. No objection" to the unqualified admission into evidence of the written transcript of the audio-recorded conversation, Appellant forfeited her complaints about the admission of her statements challenged in the motion to suppress. *See*

*Henderson v. State*, No. 02-15-00397-CR, 2017 WL 4172591, at \*16 (Tex. App.—Fort Worth Sept. 21, 2017, pet. ref'd) (mem. op., not designated for publication) (holding defendant forfeited any suppression complaints challenging the contents of two small safes by stating "We don't object" and "No objection" when the record did "not plainly indicate an intention not to abandon" the complaints). We therefore overrule Appellant's first issue.

## II. Appellant's General Objection to the Prosecutor's Closing Argument Failed to Preserve Error.

In her second point, Appellant contends that the trial court erred by allowing improper and inflammatory jury argument outside the record. In the State's initial closing argument after the punishment phase, the prosecutor argued,

> And I just want to throw out one thought to you. You came back with the right verdict, that if you hadn't, if you'd come back with a not guilty, can you imagine the floodgates that would be open to illegal voting in this county?

Appellant's defense counsel objected that "that's an improper argument here at sentencing," and the trial court overruled the objection. Appellant's defense counsel did not object that the prosecutor's argument was outside the record.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). "The two main purposes of requiring a

specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Unless the legal basis for a general objection is obvious to the trial court and opposing counsel, it preserves nothing for review. *Resendez*, 306 S.W.3d at 313; *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). Further, the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark*, 365 S.W.3d at 339; *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).

Appellant did not raise her "outside the record" ground in the trial court. She therefore did not preserve that part of her complaint, *see Clark*, 365 S.W.3d at 339; *Lovill*, 319 S.W.3d at 691–92, and the general objection her defense counsel did make—"improper argument"—did nothing to preserve the rest of her complaint. *See Hougham v. State*, 659 S.W.2d 410, 414 (Tex. Crim. App. [Panel Op.] 1983) (holding objection to "this line of argument" not specific enough to preserve error); *Vasquez v. State*, 501 S.W.3d 691, 705 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding defendant's general objection of "improper argument" insufficient to preserve error). We therefore overrule Appellant's second issue.

## CONCLUSION

Having overruled Appellant's two issues, we affirm the trial court's judgments.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 21, 2018

9