**Affirmed as modified; Opinion Filed July 31, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00429-CR

### BRYAN KEITH ARELLANES, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-82219-2013**

## MEMORANDUM OPINION
Before Justices Lang, Myers, and Stoddart
Opinion by Justice Myers

Bryan Keith Arellanes appeals his conviction for indecency with a child by contact. After

finding appellant guilty, the jury assessed punishment at two years' imprisonment. In four issues,

appellant claims: (1) the evidence is legally insufficient to support his conviction; (2) the trial court

erred by admitting certain evidence; (3) he was denied his constitutional right to confront a witness;

and (4) the State engaged in improper jury argument. We affirm the trial court's judgment as

modified.[1]

### BACKGROUND AND PROCEDURAL HISTORY

Penny Bartley lived in California with her six biological children, including her daughters,

Jaime and Melisa. As an adult, Jaime also lived in California and had six children. Because she

---

[1] On April 21, 2015, this appeal was transferred to the Eighth District Court of Appeals in El Paso under a docket equalization order from the Texas Supreme Court. On April 12, 2018, the supreme court ordered the appeal transferred back to this Court.

was unable to care for them, Jaime often asked Penny to take her children. Jaime's personal situation did not improve, and several of her children were physically and sexually abused by Jaime's boyfriends, roommates, and associates. Penny and her husband Bart eventually adopted all six of Jaime's children.

In February 2005, Penny, Bart, and the six (adopted) children moved from California to Wylie, Texas. In August of that year, Melisa, appellant (her husband), and their daughter also moved from California to Texas. Initially, they moved in with Penny and her family. Penny described her relationship with Melisa as "very close" and said they were more like friends than mother and daughter. During the time the two families lived together, everyone seemed happy. After about eight or nine months, Melisa, appellant, and their daughter moved into their own home; shortly thereafter, Melisa gave birth to a baby boy.

One night after Melisa's family had moved, Penny went upstairs to check on the children and discovered the youngest girls, R.E.B and R.A.B., simulating a sex act. Penny spanked and scolded them. The following day, the oldest daughter, K.B. told school officials that her younger siblings had been beaten with a belt. This resulted in a CPS investigation. K.B. was implicated in initiating the sexual behavior of her siblings and entered a sex offender program for two years. Several of the other children, including the two youngest girls, went to counseling at the Children's Advocacy Center.

In December 2012, Melisa and her family moved back in with Penny's family. Although everyone appeared to get along, Penny said there were times she felt uncomfortable with the way appellant hugged R.E.B. and R.A.B., both of whom were beginning to develop physically. According to Penny, appellant would lean "back in his chair and [the girls] would be laying, literally laying across his whole body as he was reclining in the chair." As a general rule, she did not approve of "frontal hugs;" she definitely did not approve of the hugs appellant gave the girls.

–2–

One evening, appellant reached down and picked R.A.B. up "by both of her buttocks," using "both his hands on her buttocks the whole time." Penny said it looked inappropriate, and her "mom alarm" went off. Rather than confront appellant, Penny decided it would be better that Melisa and her family move out. Penny helped Melisa find a house and, in 2013, Melisa's family, including appellant, again moved out.

Tatiana Vazquez was a friend of both Penny's and Melisa's families. R.E.B. and R.A.B. thought of her like a sister. Tatiana was also the Bible teacher for R.E.B and R.A.B. and helped them with their Bible studies in preparation for their baptism as Jehovah's Witnesses. One day, after Melisa and appellant had moved out for the second time, R.E.B. called Tatiana and told her that appellant "had been texting her throughout the day and it was making her very uncomfortable, that he texted her a lot." R.E.B. said it was "like between a boyfriend and a girlfriend" and it bothered her. R.E.B. then said appellant made "her feel uncomfortable, [and] that he tried to touch her breasts." Tatiana told R.E.B. to text appellant, "Quit texting me or I will tell mom." Appellant responded, "Don't know what you talking about but okay." He then texted, "That's not funny. Don't threaten me." Tatiana called Penny and told her that the girls needed to talk to their mom that evening. Tatiana said she would be there for "moral support."

When Tatiana got to the house, R.E.B. and R.A.B. told Penny what had happened. Both girls were emotional and crying. According to R.E.B., appellant touched her breasts in a circular motion when he hugged her and "it was not an accident." Penny knew that, as a Jehovah's Witness, "when someone does something against you first you go to him and say something to him directly." So Penny confronted appellant about R.E.B., saying "I know what's been going on between you and [R.E.B.]. I read the texts off of her phone." Appellant responded, "Well, did she tell you what she's been doing to me? How she rubs herself all over me?" He then walked away.

Penny was told the next steps included going to the church elders and forming a judicial

–3–

committee to determine if the alleged wrongdoing violated Bible principles. She spoke with the elders and learned that a judicial committee could not be formed because there were not "two witnesses to the matter." At that point, the police were notified. Appellant was arrested and charged with two counts of indecency with R.E.B. He was acquitted of indecency by touching her genitals but convicted of indecency by touching her breasts. This appeal followed.

## DISCUSSION

### 1. Sufficiency of the Evidence

In his first issue, appellant asserts the evidence is insufficient to prove he committed the offense of indecency with R.E.B. by sexual contact. Although he concedes he "may have touched the breast of R.E.B.," he contends the State failed to establish that he acted with the intent to gratify his sexual desire.

When determining whether the evidence is sufficient to support a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury, as the fact-finder, may make reasonable inferences from the evidence presented at trial in determining an appellant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). When there is conflicting evidence, we presume the fact-finder resolved those conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the trier of fact's determinations of a witness's credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Our role as an intermediate appellate court is restricted to guarding against the rare occurrence when a fact-finder does not act rationally. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (*citing Laster v. State*, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009)).

A person commits the offense of indecency with a child if, with a child younger than seventeen years of age, he engages in sexual contact with the child. TEX. PENAL CODE ANN. § 21.11(a)(1) (West Supp. 2017). Sexual contact means any touching by the person, including touching through clothing, of the breast or any part of the genitals of a child, with the intent to arouse or gratify the sexual desire of any person. *Id*. § 21.11(c). Whether the person possessed the requisite intent to commit an offense is most often proven through the circumstantial evidence surrounding the crime. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). The jury may infer the requisite intent from the acts, words, and conduct of the accused. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Scott*, 202 S.W.3d at 408. No oral expression of intent or visible evidence of sexual arousal is necessary. *Jimenez v. State*, 507 S.W.3d 438, 440 (Tex. App.—Fort Worth 2016, no pet.); *Gregory v. State*, 56 S.W.3d 164, 171 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd).

The guilt/innocence portion of appellant's trial lasted three days, during which time fourteen witnesses testified. Among those was R.E.B. who testified that when she was about 14 or 15 years old, appellant hugged her and put his hands on her breasts. She said he rubbed her breast in a circular motion and "it was not an accident." R.E.B. said appellant would extend his arms like he was going to give her a "regular hug" but when she got close, he touched her breasts. This began shortly after appellant and Melisa moved in with Penny's family for the second time, and it happened a lot. R.E.B. said appellant texted her too much and said it made her feel uncomfortable. One time when she was sick, he asked her if it was "because of our special hugs." She replied that she did not like the way he touched her. R.E.B. also testified that on two occasions, appellant told her "it's our secret."

In contrast, appellant testified R.E.B. was like a daughter to him. He denied intentionally

touching her or intentionally hurting her. He admitted he frequently hugged R.E.B. in addition to several other of Penny's children. He said that around 2013, R.E.B. began flirting with him. She often rubbed on his arm in a flirtatious manner and wore inappropriate clothing around him. Nevertheless, he did not tell Penny, Bart, or Tatiana about her inappropriate behavior. He also testified that it did not occur to him to back away from her or stop hugging her when she started being "flirtatious."

The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). As such, the jury may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). R.E.B.'s testimony that appellant touched her breasts and that it "was not an accident," coupled with her testimony about "special hugs" and "our secret," is sufficient to support the jury's verdict. Viewing all the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant acted with intent to gratify his sexual desire when he hugged R.E.B. and touched her breasts. We overrule appellant's first issue.

## 2. Admission of Evidence

In his second issue, appellant contends the trial court erred by admitting certain evidence during punishment. Appellant argues the evidence should have been excluded under rule 403 of the rules of evidence because it confused and misled the jury.

During punishment, Melisa testified about appellant's character and why he would be a good candidate for probation. On cross-examination, the State asked Melisa if she knew that K.B. "has also said that [appellant] molested her." Appellant objected to the evidence as "hearsay confrontational." The trial court overruled the objection but later gave appellant a running objection to "anything that [K.B.] might have said."

–6–

The law is well-settled that to preserve an issue for appellate review, a party must object and state the grounds for the objection with enough specificity to make the trial judge aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). The objection must be sufficiently clear to give the trial court and opposing counsel an opportunity to address and, if necessary, correct the purported error. *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). If a trial objection does not comport with arguments on appeal, error has not been preserved. *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Wilson*, 71 S.W.3d at 349.

Here, appellant's objection was "hearsay confrontational." He did not object to the probative value of the evidence being outweighed by the danger of confusing the issue or misleading the jury, his issue on appeal. Under these circumstances, we conclude he has failed to preserve error regarding this question. *See Wilson*, 71 S.W.3d at 349 (holding that to preserve error, complaining party's trial objection must be same as appellate complaint). We overrule appellant's second issue.

### 3. Confrontation Clause

In his third issue, appellant contends he was denied his constitutional right of confrontation of another family member "who made serious allegations about bad acts he supposedly committed, but who was never produced by the prosecution." At issue is the State's cross-examination of Melisa during punishment about K.B.'s allegations against appellant, and whether this violated appellant's rights under the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. An accused's right to confront the witnesses against him is violated by the admission of a hearsay statement made by a non-testifying declarant if the statement was

testimonial and the accused lacked a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). But the Confrontation Clause is not implicated when the use of the evidence is for impeachment because the function of the Confrontation Clause is to prohibit the use of out-of-court testimonial statements introduced to establish the truth of the matter asserted. *Del Carmen Hernandez v. State*, 273 S.W.3d 685, 687–89 (Tex. Crim. App. 2008); *see also Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *Juarez v. State*, No. 05–12–00125–CR, 2013 WL 3957008, *9 (Tex. App.—Dallas Jul. 31, 2013, pet. ref'd) (mem. op., not designated for publication). The purpose of permitting cross-examination of a character witness through "have you heard" or "do you know" questions is not to discredit the person whose character is in issue, but to discredit the testimony of the character witness. *Harrison v. State*, 241 S.W.3d 23, 25 (Tex. Crim. App. 2007); *Juarez*, 2013 WL 3957008, *9. Because the complained-about statements were offered to impeach Melisa's opinion of appellant's character, the Confrontation Clause is not implicated. *See Del Carmen Hernandez*, 273 S.W.3d at 687–89. We overrule appellant's third issue.

### 4. Jury Argument

In his fourth issue, appellant argues he was denied due process when the State engaged in improper jury argument. Appellant contends the State's cumulative improper arguments were so extreme as to constitute reversible error. For the reasons that follow, we disagree.

As a general rule, appropriate jury argument falls within only four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). To preserve a complaint that jury argument was improper, a defendant must lodge a "proper objection," specifically "that the argument was outside the record, was not a reasonable deduction from the evidence, was not an answer to argument of opposing counsel, and was not a

plea for law enforcement." *Hougham v. State*, 659 S.W.2d 410, 414 (Tex. Crim. App. [Panel Op.] 1983); *Vasquez v. State*, 501 S.W.3d 691, 705 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In contrast, statements such as, "We will object to this line of argument" are "insufficient to preserve error" regarding a claim of improper jury argument because they are "too general to apprise the trial court of the ground" for a defendant's objection. *Hougham*, 659 S.W.2d at 414; *see* TEX. R. APP. P. 33.1(a)(1)(A).

Once a defendant makes a proper objection, he must pursue it to an adverse ruling. *Hernandez v.* State, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App 1996). If he fails to do so, he forfeits his right to complain on appeal about the argument. *Hernandez*, 538 S.W.3d at 622–23; *see Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (even assuming State's argument was so egregious that instruction to disregard would be ineffectual, defendant "should have moved for a mistrial to preserve this error"); *Cockrell*, 933 S.W.2d at 89 (right to trial untainted by improper jury argument is forfeitable).

Appellant first complains of the following argument at the conclusion of guilt/innocence:

STATE: I want you to keep in mind what came out in his testimony was that in the grand jury he didn't say to the grand jury I did not touch her. He said, "I don't think I touched her."

DEFENSE: Objection, Judge, that was not in evidence.

COURT: Well, ladies and gentlemen, you're going to have to use your own memory as to what the evidence was. I can't fill it in for you. If the attorneys say something in argument that is not supported by the evidence, you are to disregard it.

Although the trial court did not sustain appellant's objection, it did instruct the jury to remember the evidence. Appellant did not seek further relief. Because appellant did not pursue his objection to an "adverse ruling," he cannot complain on appeal about the argument. *See Hernandez*, 538 S.W.3d at 622.

Appellant next complains of the following statement by the State:

I'm going to ask that you find the defendant guilty on all three counts because he is guilty, and show these girls that they're worth it and that they did the right thing and that you stand with them.

Appellant objected to "improper argument;" the trial court responded by stating, "Rephrase the last statement, counsel." Even assuming the trial court's instruction to the prosecutor to "rephrase your statement" can be considered as sustaining the objection, appellant failed to request that the jury be instructed to disregard the argument and failed to request a mistrial. Thus, any complaint is waived. *See Cockrell*, 933 S.W.2d at 89 (appellant must object and pursue objection to adverse ruling); *Williams v. State*, 747 S.W.2d 812, 813 (Tex. App.—Dallas 1986, no pet.).

Appellant's third complained-of argument occurred after he presented his closing argument. During the State's final argument, the State said:

Reasonable doubt is very easy and in this case a verdict is very easy. Either she's lying or she's not. If you believe she's lying, find him not guilty. If you believe she's telling the truth, that she did the right thing, you send her a message—

Appellant objected to "improper argument," which was overruled. As noted previously, a general objection fails to apprise the trial court of the ground for a defendant's objection and is insufficient to preserve error. *Hougham*, 659 S.W.2d at 414. Moreover, it is a proper plea for law enforcement.

Finally, appellant complains of error when the State argued, "I ask you to find him guilty on all counts because he is guilty and because he is the 'monster' that R.E.B. described to you." Appellant objected to "counsel's characterizing the defendant as a monster. That's improper argument, Judge." During trial, R.E.B. testified appellant "acts like in front of everybody he's this sweet person but nobody knows his other side, the side that hurt me. Nobody sees the monster inside of him." Thus, the State's comment was proper because it was a summation of the evidence. We overrule appellant's fourth issue.

### 5. Modification of Judgment

Although not raised by the parties, we note that the trial court's judgment of conviction

states that the plea to and the findings on the first enhancement paragraph were "true." The indictment in this case does not have an enhancement paragraph and nothing in the clerk's record shows the State amended the indictment to include an enhancement paragraph. The reporter's record shows that appellant did not plea true to any enhancement paragraph and that the jury charge on punishment does not include any instruction on a finding of true to an enhancement paragraph.

This Court may modify the trial court's judgment and affirm it as modified. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26 (Tex. Crim. App. 1993). We can correct and reform the judgment of the court below "to make the record speak the truth" when the necessary information is in the record before us. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the trial court's judgment of conviction for indecency with a child by contact to reflect the plea and the finding as to the first enhancement paragraph is "N/A."

As modified, we affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180429F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRYAN KEITH ARELLANES, Appellant

No. 05-18-00429-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 219-82219-2013.
Opinion delivered by Justice Myers.
Justices Lang and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

| | |
|---|---|
| **PLEA TO 1st ENHANCEMENT PARAGRAPH** | **N/A** |
| **FINDINGS ON 1st ENHANCEMENT PARAGRAPH** | **N/A** |

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 31st day of July, 2018.